IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF NORTH CAROLINA

CHARLOTTE DIVISION

BRYAN COATS
PETITIONER,

v

UNITED STATES OF AMERICA,
RESPONDENT.

CASE NO: 3:11-cr-00309-RJC-1
3:16-cv-00452-RJC

APPEAL NO: 17-6143

RECEIVED
OTTE, NC
NOV 07 2017
Clerk, US District Court
Western District of NC

PETITIONER'S MOTION REQUESTING PLAIN ERROR REVIEW PURSUANT TO RULE 52(b) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE, AMENDED OR ADDITIONAL FINDINGS

COMES NOW BRYAN COATS, the Petitioner in pro se, to raise a claim of PLAIN ERROR. The Petitioner will demonstrate that the plain and whether inadvertence, mistake, or neglect affected his Substantial Constitutional Rights and that the error was not harmless.

The Petitioner presents the following issues concerning errors committed in the course of the criminal proceedings against the Petitioner and others. These issues and claims are as follows:

1) When a criminal defendant has been found guilty by a jury, it is only reasonable that the defense counsel has preserved the right to appeal and for counsel's performance to be adequate and effective. Counsel has a duty to inform the court of timely notice of appeal, as required by the Criminal Justice Act. Petitioner's counsel failed to do so, rendering his performance ineffective assistance.

(1)

2) Was Petitioner's counsel's performance so deficient at sentencing that due to this deficient the Petitioner's Due Process Rights were violated thereby prejudicing the Petitioner?

3) Would the outcome of the criminal proceedings been different if, through disclosure by the Government of all exculpatory and inculpatory evidence?

4) When a criminal defendant enters a gulity plea on his reasonable belief that he has preserved his right to appeal a non-jurisdictional issue, is the defendant's plea a conditional one within the meaning of Federal Rules Of Criminal Procedure, Rule 11/

5) Did Petitioner's counsel make petitioner fully aware that his guilty plea waived his right to assert a Constitutional Challenge on Appeal?

6) If the plea is not conditional, within the concept of Rule 11, was it still knowingly and voluntarily entered as is required under Rule 11?

7) was the Petitioner's plea agreement rendered involuntary because the Petitioner did not nor was fully made aware of the Constitutional Protections that he was waiving?

8) Was the conditions of the plea agreement, concerning the Petitioner's right to appeal, properly preserved for the purpose of appeal?

9) Did the fact that the Petitioner was not made aware of the fact that he should have entered into a conditional plea agreement, for the purposes of appeal, prejudicial towards the Petitioner?

10) Was the Petitioner's Substantive Rights violated by the Court when the court denied Petitioner's §2255 claims concerning the successful money laundering defense presented by coconspirator Simmons?

## JURISDICTIONAL STATEMENT

As this petition for plain error review arose from the prosecution of person or persons in violation of the laws of the United States, the District Court had original subject matter jurisdiction pursuant to title 18 U.S.C.§3231.

The jurisdiction for a Court Of Appeals to execute authority upon and adverse or contrary decision of a District Court, or to review for Plain Error, is established under Title 18 U.S.C.§3742, Title 28 U.S.C.§1292 and §1292.

## FACTS AND LAW IN SUPPORT

Federal Rules Of Criminal Procedure, Rule 52(b), better known as the "Plain Error Rule", states that plain error that affects Substantial Rights may be considered even though it was not brought to the court's attention. Rule 52(b) controls when a defendant fails to timely object to trial court error, allowing the defendant to nontheless obtain a reversal of a conviction by showing among other things that plain error did affect his substantial rights. Thus, under Rule 52(b), the defendant has the burden to show prejudice.

An appellant must state and address arguments to the issues the appellant desires to have reviewed by an appellate court in the appellant's initial brief, because in preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for scope of the issues appealed.

### Rule 52(b) Amended Or Additional Findings.

Under this rule once the court has issued its findings, either

party may make a timely motion requesting the court to amend the findings it has made or to make additional findings. The motion is not limited to making additional or amended findings that would support the judgment.

The moving party may request amendment of existing findings or additional findings, even if those amendments of additional findings would effectively reverse the judgment. Indeed, the Rule expressly authorizes a moving party to join a motion to amend or make additional findings with a motion for a new trial under Rule 59(e).

Furthermore, motions to amend or make additional findings are frequently joined with motions to alter or amend judgments under Rule 59(e). the decision to grant or deny a motion for amended or additional findings is within the sound discretion of the trial court.

The Petitioner, Bryan Coats, after entering into a plea agreement was sentenced to a term of 60 months imprisonment as to count one (Conspiracy To Defraud the United States, Commodities Fraud and Securities Fraud) a violation of 18 U.S.C.§371 to be followed by a consecutive term of 102 months imprisonment for a violation of Conspiracy To Commit Money Laundering in violation of 18 U.S.C.§1956(h) for a total sentence of one hundred sixty two months. These alleged violations began in 2007 and were concluded in December of 2009.

In support of issue one the Petitioner's counsel's performance fell below a standard of objective reasonableness by failing to investigate or to make the Petitioner of the ambiguity of 18 U.S.C.§1956(a)(1)(A)(i). This statute defines "specified unlawful activity" to encompass more than 250 predicate offenses, including securities fraud and wire fraud.

Petitioner's counsel's failure to thoroughly investigate the statute for which his client was charged rendered ineffective assistance of counsel. The law was certainly available for counsel to properly research and prepare a defense based upon the law itself.

In support of issue two this deficient performance that the Petitioner's Substantial Due Process Rights were violated and his Constitutional right to the competent assistance, pursuant to the Criminal Justice Act,(18U.S.C.§3006A)and the Fifth and Sixth Amendments of the United States Constitution.

In support of issue three,I believe that if counsel had rendered a more extensive performance,of which counsel was more than qualified to do ,that the outcome of the proceedings would have been different. This is true because if counsel had investigated the charged violations of the statutes and requested a full disclosure from the Government which would have included all inculpatory and excuplpatory regardless of how such information would have influenced the outcome of the proceedings. The Petitioner would have better understood just what charge that he was in fact pleading guilty to.

In support of issue four after having entered into a plea agreement it came to my personal knowledge that one of my coconspirators,Keith Simmons, had appealed the sentence imposed on him for money laundering violations.In Simmons appeal he used a Supreme Court case to obtain relief that was in effect when the district court imposed the sentence upon myself and the other conspirators. The argument presented by Simmons ,on appeal was that the transactions prosecuted as money laundering constituted essential expenses of the underlying fraudulent scheme. Evidence

(5)

presented and admitted at trial irrefutably established that the ongoing success of the fraudulent scheme depended on payments made to earlier investors, including the payments charged in the money laundering counts. The Petitioner was identically charged for the offense of money laundering and if the Court Of Appeals reversed this portion of Simmons sentence, then the court should also adjust the Petitioner's sentence due to the proportionality and disparity in the application of case law. In the context of money laundering charges, the essential nature of the payment, rather than the identity of the payment's recipient, dictates whether a given transaction raises a merger problem. Payments of purported returns to early investors are understood to constitute "essential expenses" of Ponzi schemes rather than transactions dispensing a Ponzi scheme's profits.

In support of issue five, was Petitioner's counsel's advice sufficient to support an objective standard of reasonableness, did the Petitioner's counsel adequately explain the terms and conditions of the plea agreement. pursuant to page 1, plea agreement, item II, paragraph 3 which states: The defendant is aware that the statutory minimum and maximum sentences for each count are as follows:

    Count One, Conspiracy: a maximum term of five years imprisonment, $250,000 fine, or both, and no more than three years of supervised release.

    Count Two, Money Laundering Conspiracy: no more than ten years imprisonment, a $250,000 fine or a fine of not more than twice the amount of criminally derived property involved in the transaction, and a term of supervised release.

The Petitioner asserts that this part of the plea agreement is not only unclear but misleading in its context, it leaves a very strong doubt of whether the Petitioner entered the plea intelligently with an almost complete understanding of just what his punishment was to be. The Petitioner asserts that when he entered into the plea agreement his acceptance of the terms and conditions were not knowingly, voluntarily, and intelligently made as the Petitioner relied solely on the advice of counsel as the Petitioner is and was not an astute student of law. The Petitioner anticipated that he would not be exposed to a sentence of more than ten years and as counts one and two were both conspiracy offense the Petitioner had a reasonable expectation that when combined the sentence imposed would not exceed ten years imprisonment.

The Petitioner's Base Offense Level was Level 6 and under the Specific Characteristics section the Petitioner's Offense Level was enhanced as follows:

Loss under §2B1.1 +22

Victims under §2B1.1(b)(2)(B) +4

Sophisticated Means under §2B1.1(b)(9) +2

Role under §3B1.1(a) +3

Abuse Trust under §3B1.3 +2

Money Laundering under §2S1.1)b)(2)(A) +1

Resulting in an Adjusted Offense Level of 40 increasing the Petitioner's sentencing exposure by twenty-five percent.

The Petitioner asserts that when a defendant is convicted in connection with a charge of conspiracy, the sentencing court must sentence the defendant on an individualized finding, supportable by a preponderance of the evidence, as to the foreseeable participation of the defendant.

(7)

The Petitioner asserts that in order for a court to determine a defendant's liability for the individualized acts of others, the court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant. Once the extent of a defendant's participation in the conspiracy is established, the court can then determine the defendant's reasonably foreseeable connection with that level of participation. This calculation must be based on evidence and not some mere speculative conclusion regarding the level of participation of the individual defendant.

The Petitioner now raises a Constitutional Challenge concerning the Waiver set forth in paragraph 19 page 5 of the plea agreement. Under the Freedom Of Information Act, a citizen has the exclusive right to demand through a motion to the appropriate court a full disclosure of the record of offenses charged against him. The Courts and any and all government entities has the duty to maintain and update records as they need to be revised failure to do so constitutes a Constitutional Challenge of epic proportions, which could ultimately lead to a Manifest Injustice and a Complete Miscarriage Of Justice. Mere conclusory statements contained in the Presentence Report or made by the Prosecutor at sentencing, are not, nor should they be considered in holding a defendant accountable for the acts attributable to the other participants of the conspiracy.

In support of issue six the Petitioner asserts that the above stated facts supports his claim made in issue six, Petitioner asserts that the Error committed by the Government and Probation Officer is Plain and affects the Petitioner's Substantial Rights.

In support of issue seven the Petitioner asserts that because of the facts arising from the appeal of the leader of the conspiracy, after having found guilty by a jury, which led to the Court Of Appeals vacating and remanding Keith Simmons for resentencing, based on the money laundering offense, then given this new evidence the plea agreement that the Petitioner entered is not voluntarily, knowingly or intelligently made and is therefore in violation of Rule 11.

In support of issue eight the Petitioner asserts that in light of this newly discovered evidence the waiver, by the Petitioner, to not challenge the sentence and conviction on appeal becomes Unconstitutional on its face and should be rendered null and void.

In support of issue nine the petitioner on the advice of counsel did not fully understand the ramifications and biased and prejudicial conditions in the plea agreement. While in paragraph 6(e) it appears that the plea agreement will allow the Petitioner to oppose the applied enhancements and adjustments and then on page 5 paragraph 18 the Petitioner has waived all such rights. There is absolutely no way that the Petitioner, being an intelligent man fully understood just exactly what kind of agreement that he had entered with the Government, it simply gave the Petitioner no avenue for relief even if the law changed and his offense would no longer be a crime. This erroneous advice by counsel constituted ineffective assistance of counsel and should be grounds for redress.

In support of issue ten the Petitioner asserts that his substantial due process rights were violated when the court denied the Petitioner's claim challenging the money laundering count on his §2255 motion using his coconspirator's favorable decision.

The Petitioner lists the following cases in support of his arguments and issues presented herein. In a Court Of Appeals case involving the leader on the Ponzi scheme in which the court vacated the sentence and remanded for further proceedings concerning the Money Laundering Count Charged in the overall Ponzi scheme. See United States v Keith Franklin Simmons, 737 F.3d 319; 2013 U.S.App.LEXIS 24617.No:12-4469 . In Simmons challenge he referenced a recent Supreme Court decision challenging a money laundering conviction. The challenge that Simmons presented to the court was that the federal promotional money laundering statute makes it a crime to engage in a "financial transaction involving the proceeds of unlawful activity with the intent to promote the carrying on of that activity." The statute defines "specified unlawful activity" to encompass more than 250 crimes, including securities fraud and wire fraud. This argument relied on Santos v United States, 553 U.S. 507, 128 S.Ct.2020, 170 L.Ed.2d 912(2008), Simmons argued that the money-laundering counts were based on payments made to "runners" and "collectors" who helped operate Black Diamond. This argument as posed by Santos influenced a four-justice decision which concluded that the term "proceeds" in the money-laundering statute was ambiguous, it could mean either "receipts" or "profits", the Court invoked the Rule Of Lenity to resolve the ambiguity in favor of Santos.

The plurality found that the statute's broader interpretation construes "proceeds" to mean "receipts" and this interpretation would create a "merger problem". The plurality explained that those that run illegal businesses must necessarily pay their accomplices and returns to winners or investors. If a defendant could commit money laundering merely by "paying the expenses of

his illegal activity, "all illegal businesses would involve money laundering, and the Government could punish a defendant twice for an offense that Congress intended to punish only once.

This merger problem, the plurality noted, is not limited to illegal gambling. Writing for the plurality, Justice Scalia explained:

Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds, for example, the felon who uses the stolen money to pay for the rented getaway car, would violate the money laundering statute. And any wealth-acquiring crime with multiple participants would become money-laundering when the initial recipient of the wealth gives his confederates their shares. Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money-laundering. The plurality concluded that interpreting "proceeds" to mean "profits" would resolve the merger problem by ensuring that defendants cannot be convicted of money-laundering merely for paying the essential "Crime-related expenses" of the predicate crime.

Congress amended the money-laundering statute in May 2009 and that amendment effectively overruled the decision in Santos; defining proceeds to include "gross receipts", however, because the amendment was not enacted at the time of the conduct giving rise to Simmons money-laundering convictions, this expanded definition of "proceeds" does not apply in this case. In deciding Simmons case the court relied on three previously published opinions. United States v Halstead, 634 F.3d

270(4th Cir. 2011) relying on Marks v United States,430 U.S. 188,97 S.Ct.990,51 L.Ed.2d 260 (1977). United States v Cloud,680 F.3d 396(4th Cir.2012) The court reversed Cloud's money laundering convictions concluding that the kickbacks constituted "essential expenses",because Cloud's mortgage fraud depended on the help of others and their help,in turn,depended upon payments from Cloud. united States v Abdulwahab,715 F.3d 521 (4th Cir.2013) where the court conclude that the payments "were for services that played a critical role in the underlying fraud scheme".The court therefore concluded that the same merger problem that was presented in Santos was present here and barred Abdulwahab's money laundering convictions.

The court after considering the record in Simmon's concluded that Simmon's money laundering convictions could not stand and therefore Affirmed in part,Reversed in Part,Vacated in Part,and Remanded. Sentence was vacated and remanded for further proceedings.

The Petitioner attempted to present this challenge,on appeal and in a 28 U.S.C.§2255 motion and was denied the relief, The courts denied the Petitioner's plea for justice as untimely, so the court never really reviewed the Petitioner's claims concerning his money-laundering convictions which are the same as the convictions that the Simmon's court vacated.

In the context of money laundering charges,the essential nature of the payment,rather than the identity of the payment's recipient,dictates whether a given transaction raises a merger problem. Payments of purported returns to early investors are understood to constitute "essential expenses" of Ponzi schemes rather than transactions dispensing a Ponzi scheme's profits.

The Petitioner asserts that as his alleged money laundering convictions arose from payments that he made to investors then as in Simmons, the Petitioner's conviction for money laundering should be vacated and as the Court Of Appeals for the Fourth Circuit has concluded in other cases, that a defendant cannot be convicted of money laundering merely for "paying the essential expenses of operating the underlying crime".

Therefore, Petitioner Coats argues that pursuant to these referenced cases, a reversal of the Petitioner's money laundering convictions is required. The Petitioner asserts that the payments did not involve "proceeds" of criminal activity but were rather "essential expenses" of maintaining the Ponzi scheme. Payments that constitute expenses necessary to further a crime, that by its very nature, requires periodic payments for the investors to survive, become necessary and essential expenses. A payment need not be predictable to be essential. Because the Petitioner's participation in the Ponzi scheme depended on periodic payments to investors, these payments constituted essential expenses of his criminal enterprise regardless of whether they accrued on a specified timetable.

The Petitioner's fraudulent scheme, like any typical Ponzi scheme, depended on attracting new investments through occasional payouts to existing investors and without these payouts, there would have been no new investments and, consequently, no Ponzi scheme. Petitioner Coats's payments to investors, like Santos lottery payments and Simmons payments to investors, constitute essential expenses of his underlying fraud. Punishing the Petitioner separately for these payments therefore raises the same merger problem identified in Santos and for these reasons the

(13)

Petitioner asserts that the court must reverse his money laundering convictions and remand consistent with the opinions in Santos and Simmons.

When a plea agreement attempts to waive a right that is conferred by a federal statute is, like any other contract, unenforceable if the interest in its enforcement is outweighed under the circumstances by public policy harmed by its enforcement.

The Petitioner entered into a plea agreement with the Government that unbeknowest to the Petitioner, contained a Freedom Of Information Act waiver. This waiver not only is unconstitutional, but because it waives a right that is conferred by a federal statute, it becomes unenforceable under the circumstances that public policy would be harmed by its enforcement. When such an agreement is made, it is like any other contract, if it attempts to waive a right that is granted by virtue of a federal statute, it becomes unenforceable, if the interest in its enforcement is outweighed under the circumstances by public policy harmed by enforcement.

The district court should have declined to enforce the Petitioner's Freedom Of Information Act waiver on public-policy grounds because the government failed to identify any legitimate criminal-justice interest served by the waiver and the public interest enforcing the Petitioner's FOIA waiver is outweighed by the harm to public policy that enforcement would cause.

The Petitioner asserts that waivers of appeal rights are permissable, in part, because they promote the finality, the prosecution avoids expending time and resources putting the matter to rest. Similarly, when a criminal defendant waives his

right to a trial, prosecutors save time and resources typically involved in obtaining a conviction, and when a criminal defendant waives his right to impeachment under Giglio v United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104(1972) prosecutors can secure guilty pleas without prematurely disclosing witnesses or information of trial strategy.

A criminal defendant can even agree to give up his right to pursue a §1983 damages action in exchange for dropping a prosecution, as long as the prosecutor has "an independent, legitimate" reason directly related to his prosecutorial responsibilities, for "seeking such an agreement, for instance, sparing a victim, the public scrutiny and embarrassment she would have endured," as a key witness if the case had gone forward.

In general, "criminal defendants may waive both constitutional and statutory rights," provided they do so voluntarily and knowingly with knowledge of the nature and consequences of the waiver ." A defendant may waive his right to remain silent, his right to a jury trial, or his right to counsel. The Petitioner asserts that the District court should have declined the FOIA waiver or the enforcement of, because, first FOIA rights are never waivable and secondly, in the alternative, waivers of FOIA rights in a plea agreements contravene public policy.

CONCLUSION

In conclusion, the Petitioner, Bryan Coats, humbly prays that this Honorable Court conducts a Plain Error review in this the Petitioner's Case and after review remand the case for re-sentencing, using the statutory interpretation referenced in the Santos, Simmons, Cloud, Marks, and Abdulwahab decisions money laundering and the decision in Price v United States concerning the Freedom Of Information Act waiver contained in the plea agreement. The decision in Price was rendered May 10, 2017, Appeal Number/ Docket Number 2017 U.S. Appeals LEXIS 14338 in which the defendant challenged the United States Department Of Justice Attorney's Office concerning the waiver of an unwaivable right in a plea agreement.

Plea agreements are contracts and are thus subject to the requirements of contractual law and when such an agreement waives a right that cannot be waived then such a waiver becomes unenforceable because it could not have been entered into knowingly and voluntarily. When a plea agreement attempts to waive a right that is conferred by a federal statute is, like any other contract, unenforceable if the interest in its enforcement is outweighed under the circumstances by public policy harmed by its enforcement. More specifically, the United States Supreme Court has instructed to consider whether agreements with prosecutors further legitimate prosecutorial and public interests before enforcing those agreements.

Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver. A

A defendant may waive his right to remain silent, his right to a jury trial, or his right to counsel. In this Case the District Court should have declined to enforce the Freedom Of Information Act waiver, first, because Freedom Of Information Act rights are never waivable and, in the alternative, because waivers of Freedom Of Information Act rights in plea agreements contravene public policy.

The Petitioner was not properly advised or made aware of the adverse circumstances that would arise from waiving his rights under the Freedom Of Information Act. The Petitioner's counsel rendered ineffective assistance of counsel by not properly informing the Petitioner of the ramifications that this waiver would have in any future attempt, by the Petitioner, of seeking relief from the sentence imposed on him by the district court.

The decision to sign a plea agreement containing such a waiver was not or could it ever be made in a knowing and voluntary state of mind. For instance, Keith Simmons, the obvious leader of the Ponzi Scheme, appealed his sentence and conviction and the Court of Appeals vacated and remanded his money laundering convictions. Under the Petitioner's Plea Agreement he can not petition the Courts of the Government for disclosure of either inculpatory or exculpatory evidence because of the Freedom Of Information Act waiver contained in the Petitioner's plea agreement. This fact alone renders the plea agreement unenforceable as it effects public policy adversely.

WHEREFORE all premises considered the Petitioner, Bryan Keith Coats humbly prays that this Honorable Court review this his case for Plain Error issuing an order reflecting the same granting all relief requested herein as required by law.

# CERTIFICATE OF SERVICE

I, Bryan Keith Coats, hereby certify that I have served a true and correct copy of this requested action upon the Clerk Of Court, United States District Court, Western District Of North Carolina, Charlotte Division and the Clerk Of Court, United States Court Of Appeals for the Fourth Circuit, VIA the United States Mail service on the 31 day of October 2017. I further request that upon receipt of this requested action that the Clerk Of Court please forward VIA the CM/ECF System an electronic copy of this requested action as I am incarcerated, indigent and have no other means, and as a prisoner I do not have access to the Electronic Filing System for filing Court documents.

Respectfully submitted,

x [signature]

Bryan Keith Coats #026822-058